## Randall Derry v. The State.

### No. 4461. Decided February 17, 1909.

#### Sodomy—Misconduct of Bystander.

Where upon trial for sodomy, while the jury were awaiting the charge of the court, a white man (the defendant being a negro boy) who was more or less intoxicated, approached defendant where he was sitting at the bar as a prisoner and began abusing him in the presence and hearing of the jury, accusing him of all sorts of acts of sodomy with different animals, and cursing him. Held, that this was reversible error, although some of the jurors did not hear this, and the jurors stated that they were not affected thereby.

Appeal from the District Court of Montgomery. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of sodomy; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

. F. J. McCord, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for sodomy, the punishment being assessed at five years in the penitentiary.

The State's witness Berwick testified, he saw appellant about a half mile from the commissary at the mill, driving a wagon along the road that leads from Fostoria towards Midline, just south of Fostoria. He says, he supposed appellant was riding on a wagon and supposed he was hauling ties. He says when he first

noticed appellant driving along the road he turned off the road out to the left, he supposed, about one hundred yards from the road and stopped his team. At that time the witness says he was about forty or fifty yards from appellant. Appellant stopped, walked out on his doubletree and commenced working on the pony. That he was driving a bay mare and a black horse. When he stopped the team, he walked out on the doubletree and raised her tail up, and "went to putting the rod to her, I call it." He says that at that time he did not see appellant's person. That appellant had a dog with him, that the dog "got after some hogs" and appellant quit and run the dog off. When appellant run the dog away from the hogs he, (witness) got up and walked out towards him; that appellant had not seen him, and he was going to ask him what he was doing or going to do. This witness walked up pretty close, and when appellant came back from "chunking" the dog away from the hogs, the witness discovered appellant had not seen him and went to work on the pony again. At this time the witness had approached within fifteen steps of appellant. That appellant went back on the doubletree, "took hold of the mare's tail with his hand, and 'his thing' with the other and went to work on her again. That this occurred in the morning; did not know just exactly what time, but the fore part of the day. The witness said, when he first saw appellant on the wagon he (witness) was out near the road appellant was travelling sitting down by a tree; that this tree was something like one hundred yards from the road, but when appellant stopped his wagon, he was about forty or fifty steps from the witness. The witness said this occurred in the open woods, that there was no brush or anything to obscure the vision of either the witness or defendant. The State placed Dean on the stand, who testified that he arrested appellant on information received from the witness Berwick. That the arrest occurred two or three hours perhaps afterward, or at least during the same day, and that he had to throw appellant down to place handcuffs on him. There are some other little matters, we think, not necessary here to mention.

There was a matter which occurred during the trial, and which may have had serious bearing upon the case. The testimony was closed, the lawyers had vacated their usual and accustomed place in and about the bar; the jury, however, were in their seats, and it seems the court was preparing his charge when a man by the name of Kirk, who was more or less intoxicated, approached appellant where he was sitting at the bar as a prisoner, and began abusing him, accusing him of all sorts of acts of sodomy with different animals, and cursing him as a son-of-a-bitch, etc. In order to make this matter clear, we copy the following from the record:

W. F. Spiller being duly sworn, deposes and says: "That during the trial of the case of the State of Texas versus Randell Derry,

after the evidence was in, one H. J. Kirk, in the presence and hearing of the jury, and also in the presence and hearing of affiant made the following statement to the defendant: I know how old you are; let me see your teeth, nigger, open your mouth. (The boy, defendant, then turned to said Kirk and opened his mouth.) You are twenty-two or three years old. I can tell your age by your teeth. You little son-of-a-bitch, you have got a root fourteen inches long. You better take this nigger off the range and send him to the penitentiary, or he will get with my cattle. You (reaching his hand out and putting it on defendant's neck) have a neck like a stud horse. Look at his ears: they stick up like a horse's. I can take him into a room and make him confess to it (thereby meaning the crime). This nigger worked for me. I know him and he f—ed a cow." It is further recited that after the above statement was made, the jury being excused for a few minutes, were starting down the steps, said H. J. Kirk being then at the courthouse door, very near said steps, made the further remark: "I have convicted that negro to the penitentiary." This remark was made near the jury and in a loud tone, and the jury most likely heard it.

Pat McMurrough, being sworn, deposes and says: "That during the trial of the case of the State of Texas versus Randell Derry, after the evidence was in, one H. J. Kirk, in the presence and hearing of the jury, and also in the presence and hearing of affiant, made the following statement to the defendant: 'I know how old you are; he is twenty-two or three years old. I can tell his age by his teeth. We had better send this nigger to the pen. You (reaching his hand out and putting it on the defendant's neck) have a neck like a stud horse. Look at his ears; they stick up like a horse's. I can take him into a room and make him confess to it (thereby meaning the crime). This nigger worked for me. I know him and he f—ed a cow."

These statements and matters are uncontradicted so far as their occurrence is concerned. Some of the jurors did not hear what was said. Some of them heard some portions of the statements of Kirk. The nearest juror was some six or eight feet distant from where Kirk was talking to appellant. We deem it unnecessary to go into all the details of the testimony in regard to these matters. The jurors state that they were not affected by what Kirk stated. It may be further stated that appellant was charged with sodomy in that he had connection with a mare. We are unwilling for a judgment to stand, where such conduct is made to appear as here detailed unrebuked. Such scenes and such conduct as that described by the witnesses ought not to be permitted, and should not be tolerated by the court, and the authority of the court under such circumstances should be most vigorously enforced, not only to prevent such occurrences, but to punish the offender. The jury were awaiting the charge of the court, defendant was a young negro,

about sixteen or seventeen years of age; Kirk is a white man and was more or less intoxicated, the appellant a prisoner at the bar in the presence of the court. Even if this conduct was not observed and the remarks overheard by the court, yet it was where the court was in session, and in the presence of the court, and jury, and heard by some of the jurors. Spiller and McMurrough are absolutely uncontradicted. Kirk was not used as a witness in regard to the matter, and the State relied upon an effort to show that all the jury did not hear it, and their statements that none of them let it operate upon their minds to bring about a conviction. We do not believe it right for this court to sanction conviction obtained attended by such conduct, and we feel called upon to put the seal of condemnation upon such conduct in the courtroom.

The application for continuance is not discussed as the witnesses may be obtained upon another trial.

For the reason indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*